UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| JAMUAL BURKS, | Case No. 1:24-cv-375 |
| Plaintiff, | |
| vs. | District Judge Douglas R. Cole |
| | Magistrate Judge Stephanie K. Bowman |
| SGT. MCALLISTER, *et al.*, | |
| Defendants. | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, an Ohio prisoner proceeding without the assistance of counsel,[1] has filed a civil rights Complaint in this Court under 42 U.S.C. § 1983[2] and Ohio state law for alleged events occurring at the Southern Ohio Correctional Facility (SOCF). (Doc. 1-1). By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis*.

This matter is now before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

---

[1]As noted in the Court's separate Order granting Plaintiff *in forma pauperis* status, Plaintiff was housed at the Southern Ohio Correctional Facility at the time he filed this action. (*See* Doc. 1-1, at PageID 10). However, the Ohio Department of Rehabilitation and Correction (ODRC) website indicates that he is currently housed at the Toledo Correctional Institution. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A795692.

[2]*See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) (concurrence) (Powell, J.) ("Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'") (footnote omitted).

## Screening of Complaint

### A. Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token,

however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

B. **Defendants and Allegations**

As an initial matter, although Plaintiff names the following five individuals as Defendants in the caption of this lawsuit—Sgt. McAllister; Sgt. J. Chinn; Sgt. Dillow; Correctional Officer Matt Keatin, alternatively spelled Keating by Plaintiff; and Warden Cynthia Davis—Plaintiff later lists nine additional individuals as Defendants—Case Manager O'Connor; "Assistant Hockett;" Case Manager Lydia Jenkins; Correctional Officer Spradlin; Correctional

3

Officer Skinner; "B. Treckla;" Unit Manager Harris; RIB Chairman Cooper; and Sgt. Barney. (*See* Doc. 1-1, at PageID 10, 13). It also appears from the body of the Complaint that Plaintiff intends to sue "Sgt. Prater." (*See* Doc. 1-1, at PageID 17). Given Plaintiff's pro se status, the Court liberally construes the Complaint to name each of the above fifteen individuals as Defendants. *See e.g.*, *Garza v. L.C.M.H.F.*, No. 09-3144, 2009 WL 2912790, at *1 (D. Kan. Sept. 9, 2009) (liberally construing pro se complaint to name entity included in case caption and individual listed in part two of the complaint as defendants); *see also Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *14 (E.D. Mich. June 6, 2019), *report and recommendation adopted*, No. 16-CV-10712, 2019 WL 3334810, at **14-17, 19 (E.D. Mich. July 25, 2019) (allowing parties to be identified in body of complaint); *Church v. City of Cleveland*, No. 1:10-CV-1399, 2010 WL 4883433, at *3 (N.D. Ohio Oct. 26, 2010), *report and recommendation adopted*, No. 1:10CV1399, 2010 WL 4901739 (N.D. Ohio Nov. 23, 2010) ("A court may look to the body of the complaint to determine the parties, in what capacity the defendants are being sued, and the nature of the claims asserted."). Plaintiff states that Defendants are being sued in their individual capacities. (Doc. 1-1, at PageID 14).

Plaintiff alleges that on May 23, 2024, he was in his cell in the K Block at SOCF, when, at approximately 8:15 a.m., the door to his cell was opened. (Doc. 1-1, at PageID 14). Plaintiff claims that Defendant Sgt. McCallister, who was not his Block sergeant, proceeded to "rudely and cruel[l]y" yell at Plaintiff to "keep Lt. Osbourne['s] fuckin['] name out [of his] mouth." (*Id.*) Plaintiff states that he responded to McCallister by saying something like, "What . . . is that a threat? . . . You threat[ening] me dude?" (*Id.* at PageID 15). According to Plaintiff, the cell door was then closed but Plaintiff asked Defendant Correctional Officer Keating why McCallister was targeting Plaintiff. (*Id.*). Plaintiff alleges that at that time his

4

cell door reopened and Defendant Sgt. Chinn, the Block Sergeant, told Plaintiff that McCallister wanted Plaintiff to go to the shower so "they could mess-up and destroy [his] cell and take [his] property." (*Id*.). According to Plaintiff, this exchange was captured on surveillance footage. (*Id*.).

Although not entirely clear, Plaintiff appears to allege that he yelled something from the shower like "You . . . Bitch! Dude! Ya'll keep . . . saying we're the threats! But, it's really ya'll who's the threats." (Doc. 1-1, at PageID 15). Plaintiff contends that at this time McCallister exited his cell smiling and carrying a plastic bag of Plaintiff's "property" and stated, "Contraband." (*Id*.). However, according to Plaintiff, he did not receive a disciplinary charge for having contraband but for destroying property, which he claims was never proven. (*Id*.). It appears that Plaintiff may have also received a disciplinary charge for threats. (*See id*. at PageID 23). Plaintiff claims that McCallister, Chinn, and Keating then stood on the range as Plaintiff was escorted back to his cell following the allegedly humiliating and retaliatory search. (*Id*. at PageID 15-16).

Plaintiff alleges that as soon as he returned to his cell and began to clean up the "mess" from the search, an unidentified correctional officer announced over the intercom that it was time for Plaintiff's "pod" to go to recreation. (Doc. 1-1, at PageID 16). Plaintiff alleges, however, that his cell door did not open and he asked the other inmates in the pod to let the booth officer know that his door remained closed. (*Id*.). Defendant Keating allegedly told Plaintiff that "someone" had said Plaintiff could not go to recreation. (*Id*.). Thereafter, Plaintiff contends, the "cuff port" on his cell door opened and Sgt. Chinn told him to "cuff up." (*Id*.). Plaintiff alleges that he asked "for what?" but followed the order to cuff up. (*Id*.). Plaintiff alleges that he was then taken to "seg[regation]/restrictive housing" in J Block and, when he apparently refused to

5

talk with a mental health representative, was placed on suicide watch. (*Id*.).

Plaintiff alleges that he was given a "dirty filthy suicide smock which smelled" and had "feces/urine" on it. (Doc. 1-1, at PageID 16). According to Plaintiff, when he asked an unidentified watch officer that night for another smock, the officer just looked at him. (*Id*.). Plaintiff states that the next day—May 23, 2024—at around noon, the watch officer had Plaintiff slide the smock out from the cell and left Plaintiff "exposed" with only a blanket. (Doc. 1-1, at PageID 17). Plaintiff alleges that he remained with only the blanket for five days—from May 24 through May 29, 2024. (*Id*.). Plaintiff alleges that not having a suicide smock amounted to intentional emotional distress and sexual humiliation. (*Id*.).

Plaintiff alleges that he was then moved within the restrictive housing unit to a "poor and unclean double door cell" that "no-one really inspected" before ordering Plaintiff inside. (Doc. 1-1, at PageID 17). Plaintiff states that an unidentified booth officer in the unit then had him moved to another cell, where Plaintiff remained until he left restrictive housing. (*Id*.). Plaintiff alleges that he "kited" about "the whole bottom range being flooded out from bad toilet piping" and "feces water" being "all over the range." (*Id*.). Plaintiff further alleges that Sgt. Prater, Defendant Correctional Officer Spradlin, and other unidentified correctional officers were on the range conducting an "inappropriate" cell search for contraband, which they "bla[med]" on the "whole (J2) low side bottom range," and "could have fixed or help[ed]" with the complained about conditions. (Doc. 1-1, at PageID 18).

Additionally, Plaintiff alleges that in response to an informal complaint that he sent regarding the range, he received a "deliberate bald face drag of an excuse" for why the inmates on the range had not been given the "bio-haz[a]rd sanitation cart for the feces water from the broke [and] moldy rusty water pipes, that came out of [a] cell that wasn[']t supposed to[] be

6

oper[able] . . . until the maintenance came and fixed the issue." (*Id*.).

Finally, interspersed through Plaintiff's Complaint are allegations about a lack of effective prison programming to prevent recidivism (Doc. 1-1, at PageID 14, 22), a lack of an effective grievance procedure (*id*. at PageID 12, 20, 22), a lack of fair treatment towards other inmates in the restrictive housing unit (*id*. at PageID 18), a lack of an effective policy to preserve video footage (*id*. at PageID 20-21), a failure to follow prison policies governing placement in restrictive housing and "Double Jeopardy" (*id*. at PageID 21), and the availability of compensatory and injunctive relief under the "Adults with Disability Acts," by which the Court understands Plaintiff to be referring to the Americans with Disabilities Act (ADA) (*id*. at PageID 19).

For relief, Plaintiff seeks monetary, declaratory, and injunctive relief. (Doc. 1-1, at PageID 14; 24).

**C.     Analysis**

Based on the above allegations, Plaintiff states that he is bringing claims for alleged violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution and for intentional infliction of emotional distress. (*See* Doc. 1-1, at PageID 14, 17, 21).

Liberally construed and without the benefit of briefing by the parties, the Complaint is deserving of further development and may proceed at this juncture on Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendants Prater and Spradlin based on Plaintiff's allegations that they were deliberately indifferent to the unsanitary conditions Plaintiff was allegedly subjected to while housed in the bottom range of the restrictive housing unit following his release from suicide watch.[3] (Doc. 1-1, at PageID 17-18). Further, out of an

---

[3]The Court advises Plaintiff that this is only a preliminary determination. The Court has not made a determination as to the merits of the claims or potential defenses thereto, nor are Defendants precluded from filing a

abundance of caution, and in light of Plaintiff's pro se status, Plaintiff may also proceed at this juncture on his state-law claim for intentional infliction of emotional distress against Defendants Prater and Spradlin arising out of the same allegations. (*See* Doc. 1-1, at PageID 21). However, for the reasons set forth below, the Complaint should otherwise be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B) & 1915A(b).

First, although Dillow, Davis, O'Connor, Jenkins, Skinner, Trackla, Harris, Cooper, and Barney are named as Defendants, the Complaint contains no factual allegations against them. Accordingly, Plaintiff has alleged no set of facts that would constitute a cause of action against Defendants Dillow, Davis, O'Connor, Jenkins, Skinner, Trackla, Harris, Cooper, and Barney, and they should be dismissed. *See Sebestyen v. Gardner*, No. 2:17-CV-550, 2017 WL 5629646, at *3 (S.D. Ohio Nov. 22, 2017), *report and recommendation adopted*, No. 2:17-CV-550, 2018 WL 4804662 (S.D. Ohio Oct. 4, 2018).

Next, the only allegation in the Complaint against Defendant Hocket is that she told Plaintiff to file grievances by way of a shared tablet, to which Plaintiff alleges that he did not have access. (Doc. 1-1, at PageID 12). However, "[a] prisoner does not have a constitutionally protected right to an effective grievance procedure." *Valladolid v. Mich. Dep't of Corr.*, No. 15-1930, 2017 WL 3528221, at *3 (6th Cir. Feb. 14, 2017) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). For this reason, Hocket should be dismissed.[4]

---

motion to dismiss, motion for more definite statement, or other appropriate motion under the Federal Rules of Civil Procedure. *See, e.g.*, *Wiley v. Austin*, No. 8:20-CV-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

[4]Additionally, to the extent that Plaintiff is asserting that he is unable to exhaust his administrative remedies and thus is unable to file a claim in federal court (*see* Doc. 1-1, at PageID 22), the claim is also without merit. While the Prison Litigation Reform Act's exhaustion requirement is "mandatory," with steps to exhaustion defined by the prison's grievance process, *Jones v. Bock*, 549 U.S. 199, 211 (2007), an inmate need only exhaust "available" remedies under the statute, not unavailable ones, *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). *See also Paolone v. Altiere*, No. 4:12CV1344, 2012 WL 5463871, at *3 (N.D. Ohio Nov. 8, 2012) ("A corrections officer therefore cannot prevent an inmate from proceeding to court by refusing to accept a grievance or an appeal.").

Nor has Plaintiff stated a plausible retaliation claim. The Court understands Plaintiff to be raising a retaliation claim against Defendants McCallister, Chinn, and Keating for the search of his cell, the missed recreation session, and his subsequent placement in restrictive housing and on suicide watch. A prisoner's claim of retaliation is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

The Court cannot conclude from Plaintiff's allegations that he was engaged in protected conduct. To the extent that Plaintiff claims that he was being retaliated against for making complaints about Osbourne, he has not pled any facts from which the Court can infer the context in which he used Osbourne's name. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Nor is insolent behavior, such as Plaintiff's backtalk to Defendant McCallister and the comments Plaintiff acknowledges that he made from the shower sufficient to state a claim for relief. "A prisoner's behavior in violation of prison regulations, including insolence, is not 'protected conduct' under the First Amendment." *Lewis v. Grabowski*, No. 18-CV-13530, 2019 WL 861142, at *2 (E.D. Mich. Feb. 22, 2019) (citing *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008)). Finally, Plaintiff's oral complaint to Keating about McAllister's alleged comments is insufficient to constitute protected conduct. *See Matthews v. Bleil*, No. 2:21-CV-13017, 2024

9

WL 3976896, at *7 (E.D. Mich. July 19, 2024) (finding a grievance complaining only of a single instance of alleged verbal abuse to be frivolous and not protected conduct) (citing cases), *report and recommendation adopted*, No. 21-13017, 2024 WL 3974675 (E.D. Mich. Aug. 28, 2024).

      Plaintiff has also failed to state a plausible Fourteenth Amendment due process claim to the extent he alleges that Defendant McCallister issued a false conduct report against him. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr,* No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Id.* at *2 (citing *Sandin v. Conner,* 515 U.S. 472, 485 (1995)). Plaintiff's false-conduct-report allegations are insufficient to trigger constitutional concerns in this case because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (stating that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original). *Cf. Wilkinson v. Austin,* 545 U.S. 209, 223–24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole

10

consideration of otherwise eligible inmates). Because Plaintiff has not alleged facts showing that his time in disciplinary segregation was indefinite or excessively long in duration, *see Joseph*, 410 F. App'x at 868, or that he was otherwise subjected to the kind of "atypical and significant" hardships found in *Wilkinson*, 545 U.S. at 223-24, his false-conduct-report claims against McCallister should be dismissed.

Relatedly, claims for destruction of personal property under the Fourteenth Amendment require a plaintiff to "plead . . . that state remedies for redressing the wrong are inadequate" in order to state a claim. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Here, Plaintiff has not done so, but has simply alleged that his cell was messed up and McCallister left with a bag of his "property." These bare allegations fail to state a claim. *Darling v. Lake Cty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cty. Com'rs, Clermont Cty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007) (in turn citing *Parratt*, 451 U.S. 527)) (a plaintiff "does not state a due process claim merely by alleging the deprivation of property").

Furthermore, although the Court has, at this juncture, allowed Plaintiff's Eighth Amendment conditions-of-confinement claims related to his time in restrictive housing to proceed against Defendants Prater and Spradlin for further development, Plaintiff's claims relating to the conditions he was allegedly subjected to while on suicide watch should be dismissed. Plaintiff fails to identify which, if any, of the named Defendants were responsible for the complained about conditions on suicide watch. A complaint must give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*,

11

355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a). Because the Court cannot identify which Defendant is the subject of Plaintiff's suicide-watch claim, it should be dismissed. *See Chadwell v. Proctor*, No. 3:19-CV-0004, 2019 WL 3779990, at *1 (E.D. Ky. Aug. 12, 2019).

Additionally, to the extent Plaintiff may be asserting claims on behalf of other inmates at SOCF as well as himself (*see* Doc. 1-1, at PageID 18), he "lacks standing to assert the constitutional rights of other prisoners." *Dodson v. Wilkinson,* 304 F. App'x 434, 438 (6th Cir. 2008) (and cases cited therein); *see also Marcum v. Jones,* No. 1:06cv108, 2006 WL 543714, at *1 (S.D. Ohio Mar. 3, 2006) (Dlott, J.) (and cases cited therein) (holding that a pro se inmate "may bring his own claims to federal court without counsel, but not the claims of others"). Therefore, Plaintiff's claims are limited to alleged violations of his own federal rights. *Cf. Dodson,* 304 F. App'x at 438.

Moreover, Plaintiff does not have a constitutional right to participate in prison rehabilitation programs. *See Christensen v. Zavaras*, No. 98-1096, 1998 WL 796123, at *2 (10th Cir. Nov. 17, 1998) (citing cases). Nor are his conclusory references to the ADA or the "Double Jeopardy" Clause (*see* Doc. 1-1, at PageID 19, 21) sufficient to state a claim. *See, e.g., Alvarez v. Maryland Dep't of Corr.*, No. CV PX-17-141, 2018 WL 1211533, at *11 (D. Md. Mar. 8, 2018) ("Simply referring to . . . statutes [or constitutional principles] without some factual predicate establishing the State Defendants' liability under the same will not suffice.") (citing cases). Furthermore, Plaintiff's suggestion that his stay in the restrictive housing violated prison policy (*see* Doc. 1-1, at PageID 21) fails to state a claim for relief. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("claims related to violations of prison policies do not state a constitutional violation").

Likewise, any claim by Plaintiff against Defendants for failing to preserve video footage

also fails. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). *Cf. Johnson v. Warden*, No. 3:21CV1514 (KAD), 2022 WL 344272, at *4 (D. Conn. Feb. 4, 2022) (dismissing a plaintiff's claims that prison officials failed to respond to grievances and requests to preserve video footage). To the extent that Plaintiff is trying to allege a violation of his First Amendment right of access to the courts, he has failed to do so. Plaintiff has not alleged that any failure to preserve video footage actually impeded him in an existing or contemplated non-frivolous legal proceeding, *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996), or that a spoliation instruction would not provide him a remedy, *see, e.g.*, *Jenkins v. Hutcheson*, No. 6:15-cv-50, 2015 WL 9480037, at *4 n.3 (S.D. Ga. Dec. 29, 2015).

Accordingly, in sum, the Complaint, with the exception of Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendants Prater and Spradlin for their alleged deliberate indifference to the unsanitary conditions Plaintiff was allegedly subjected to while housed in the bottom range of the restrictive housing unit following his release from suicide watch and Plaintiff's state-law claim for intentional infliction of emotional distress against these Defendants arising out of the same allegations, should be **DISMISSED**. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

However, Plaintiff has failed to provide completed summons and U.S. Marshal forms for service of process on Defendants Prater and Spradlin.[5] It is therefore **ORDERED** that Plaintiff, **within thirty (30) days** of the date of this Order and Report and Recommendation, submit to the Court a completed summons and U.S. Marshal form for each of Defendants Correctional Officer

---

[5]Instead, Plaintiff has provided a single summons and U.S. Marshall form naming multiple Defendants. (*See* Doc. 1-3).

13

Spradlin and Sergeant Prater. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process by the United States Marshal. **Plaintiff is advised that failure to comply with this Order shall result in the dismissal of this action for want of prosecution.**

IT IS THEREFORE RECOMMENDED THAT:

1. The Complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), **with the exception of** Plaintiff's (1) Eighth Amendment conditions-of-confinement claim against Defendants Prater and Spradlin for their alleged deliberate indifference to the unsanitary conditions Plaintiff was allegedly subjected to while housed in the bottom range of the restrictive housing unit following his release from suicide watch, which may proceed for further development at this juncture; (2) state-law claim for intentional infliction of emotional distress against these Defendants arising out of the same allegations, which may proceed for further development at this juncture; (3) remaining state-law claims, which should be **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3); (4) claims against Defendants Dillow, Davis, O'Connor, Jenkins, Skinner, Trackla, Harris, Cooper, and Barney, which should be **DISMISSED without prejudice** for failing to include any allegations against them; and (5) Eighth Amendment claim regarding the alleged conditions on suicide watch, which should be **DISMISSED without prejudice** for failing to identify which, if any, of the named Defendants were responsible.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff, **within thirty (30) days** of the date of this Order and Report and Recommendation, submit to the Court a completed summons and U.S. Marshal form for each of Defendants Correctional Officer Spradlin and Sergeant Prater. Once the Court receives the requested summons and U.S. Marshal forms, the Court will order service of process by the United States Marshal.

2. Plaintiff shall serve upon Defendants or, if an appearance has been entered by counsel, upon counsel, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. For the reasons stated in Footnote 1 of the Court's separate Order granting Plaintiff's motion to proceed *in forma pauperis*, the **Clerk of Court** is **DIRECTED** to mail a copy of this Order and Report and Recommendation to Plaintiff, under Inmate Number A795692, at both the Southern Ohio Correctional Facility and the Toledo Correctional Institution.

4. Plaintiff is **ORDERED** to update the Court with his current address and to keep the Court apprised of any changes to his address during the pendency of this lawsuit.

5. The **Clerk of Court** is **DIRECTED** to update the docket of this case to reflect that Plaintiff has named the following Defendants: Sgt. McAllister; Sgt. J. Chinn; Sgt. Dillow; Correctional Officer Matt Keatin; Warden Cynthia Davis; Case Manager O'Connor; Assistant

Hockett; Case Manager Lydia Jenkins; Correctional Officer Spradlin; Correctional Officer Skinner; B. Treckla; Unit Manager Harris; RIB Chairman Cooper; Sgt. Barney; and Sgt. Prater.

**PROCEDURE ON OBJECTIONS:**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

November 22, 2024                                             *s/Stephanie K. Bowman*
                                                                            Stephanie K. Bowman
                                                                            UNITED STATES MAGISTRATE JUDGE