# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JAMUAL BURKS,

      Plaintiff,

                                          Case No. 1:24-cv-375

  v.

                                          JUDGE DOUGLAS R. COLE

SGT. MCALLISTER, et al.,             Magistrate Judge Bowman

      Defendants.

## OPINION AND ORDER

Magistrate Judge Bowman's November 22, 2024, Report and Recommendation (R&R, Doc. 4) recommends that this Court dismiss all but two of Plaintiff Jamual Burks' myriad claims (some with prejudice and some without). The two claims not recommended for dismissal are an Eighth Amendment conditions-of-confinement claim and an intentional infliction of emotional distress claim, both based on time Burks spent in restrictive prison housing, and both of which, according to the Magistrate Judge's reading, he asserts solely against Defendants Spradlin and Prater. For the reasons stated below, the Court largely **ADOPTS** the R&R (Doc. 4). Specifically, the Court agrees that only those two claims will advance, and that the Court must dismiss the rest. But the Court draws the line slightly differently on how that dismissal will occur. In particular, the Court **DISMISSES WITH PREJUDICE** Burks' claim against Defendant Hockett, his lack-of-rehabilitation-program claim, and his prison-policy-violation claim, but the Court **DISMISSES WITHOUT PREJUDICE** all remaining claims.

On July 11, 2024, Burks, a pro se prisoner, sued various prison officials and staff members at the Southern Ohio Correctional Facility (SOCF) for numerous allegedly unlawful actions—actions he says violated the First, Eighth, and Fourteenth Amendments, as well as state law. (*See generally* Compl., Doc. 3). Specifically, Burks sued Sergeant McAllister, Sergeant J. Chinn, Sergeant Dillow, Correctional Officer Matt Keatin,[1] Warden Cynthia Davis, Case Manager O'Connor, Assistant Hockett, Case Manager Lydia Jenkins, Correctional Officer Spradlin, Correctional Officer Skinner, B. Treckla, Unit Manager Harris, RIB Chairman Cooper, Sergeant Barney, and Sergeant Prater, all in their individual capacities. (*Id.* at #36, 39, 40, 43).[2]

At bottom, Burks' claims seem to stem from a May 23, 2024, verbal altercation he had with McAllister, after which McAllister, Keatin, and Chinn (or some combination of those three) allegedly searched Burks' cell and took his property, prohibited him from going to recreation, issued a false conduct report against him, and took him to restrictive housing. (*See id.* at #40–42, 47, 49). When Burks apparently refused to speak with a mental health representative, an unnamed prison employee allegedly placed him on suicide watch, during which time Burks says he experienced filthy conditions, emotional distress, and sexual humiliation for several days. (*Id.* at #42–44). Once off suicide watch, Burks alleges that an unnamed prison

---

[1] Burks alternatively spells his name as "Keating" at least once in the Complaint. (Doc. 3, #37).

[2] Although Burks listed only five Defendants in the Complaint's caption, he listed the other ten elsewhere in the Complaint. But given Burks' pro se status, the Magistrate Judge liberally construed Burks' Complaint as naming all fifteen Defendants. (Doc. 4, #55–56).

2

employee took him to an "unclean" double-door cell. (*Id.* at #43). Then, another unnamed employee, whom the Complaint describes as a "booth officer," ordered him moved to yet another cell where Burks remained until he left restrictive housing. (*Id.*). While in that cell, Burks claims Spradlin, Prater, and other unidentified correctional officers conducted an "inappropriate" cell search and ignored the "feces water" that flooded his unit. (*Id.* at #43–44). Burks also sprinkles additional vague claims into his Complaint, which the Magistrate Judge construed as alleging a lack of effective prison programming, a lack of effective grievance procedures, a lack of fair treatment toward other inmates, a lack of a policy to preserve video footage, a failure to follow prison policies regarding restrictive housing placement, a "Double Jeopardy" claim, and an Americans with Disabilities Act (ADA) claim. (*See id.* at #34, 40, 44, 46–48; *see also* Doc. 4, #59).

When he filed his Complaint, Burks concurrently moved for leave to proceed in forma pauperis (IFP), (Doc. 1), so the matter was referred to a Magistrate Judge under this Court's General Order 22-05. Magistrate Judge Bowman granted Burks IFP status. (Doc. 2). Then, pursuant to her screening authority under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2)(B), 1915A, she sua sponte reviewed Burks' Complaint and issued the R&R before the Court. (Doc. 4). In the R&R, she concluded that Burks cleared the PLRA screening hurdle as to his Eighth Amendment conditions-of-confinement claim and his intentional infliction of emotional distress claim—both based on his time in restrictive housing—against two

Defendants: Spradlin and Prater. (*Id.* at #59–60, 65–66). But she recommended dismissing all other claims.[3] (*Id.* at #59–66).

The R&R further notified all parties that failing to object within fourteen days could result in forfeiture of rights on appeal, which includes the right to District Court review. (*See id.* at #68); *see also Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed."); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting "fail[ure] to file an objection to the magistrate judge's R&R ... is forfeiture" (emphasis omitted)); 28 U.S.C. § 636(b)(1)(C). That deadline has long since passed, and no party has objected.[4]

The Court therefore reviews the R&R only for clear error. *See* Fed. R. Civ. P. 72(b) (advisory committee notes) (noting that "the court need only satisfy itself that there is no clear error on the face of the [R&R]"); *see also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases). None is present here. The Court does quibble, however, with the way the R&R recommends

---

[3] Specifically, the R&R recommended (1) dismissing Burks' remaining state-law claims without prejudice, (2) dismissing any claims against Defendants Dillow, Davis, O'Connor, Jenkins, Skinner, Treckla, Harris, Cooper, and Barney without prejudice, (3) dismissing Burks' Eighth Amendment conditions-of-confinement claim for his time on suicide watch without prejudice, and (4) dismissing all other claims with prejudice. (Doc. 4, #66).

[4] Beyond making recommendations to the Court, Magistrate Judge Bowman also ordered Burks to submit a completed summons and U.S. Marshal form for Spradlin and Prater within 30 days of her Order. (Doc 4, #65–66). Burks ultimately complied, though he did so nearly two weeks late. (Doc. 5). The Court, however, declines to penalize Burks for his tardiness. The receipt and dispatch of mail from prison is often delayed, which likely explains why he filed the forms after the deadline.

4

dismissing some of Burks' claims—that is, with prejudice, or without—a topic to which the Court returns below.

Expanding on that a bit, the Court begins with the two claims that the R&R recommends should proceed—the conditions-of-confinement and intentional infliction of emotional distress claims against Spradlin and Prater. Especially given the lack of any objections, the Court agrees that those claims may go forward. Burks' Complaint puts forth facts that, at the very least, clear the PLRA's screening hurdle and warrant further development when it comes to Spradlin and Prater's alleged "deliberate[] indifferen[ce] to the unsanitary conditions" Burks claims experienced while in restrictive housing. (Doc. 4, #59). And although Burks seems to raise his intentional infliction of emotional distress claim primarily in connection with the time he spent on suicide watch, (*see* Doc. 3, #43), given his pro se status, the Court finds no error in allowing any such claim to proceed to the extent he alleges it in connection with his time in restrictive housing post-suicide watch (i.e., once moved out of the double-door cell). (*Id.* at #59–60).

The rest of Burks' claims, though, fail. Start with the claims against Dillow, Davis, O'Connor, Jenkins, Skinner, Treckla, Harris, Cooper, and Barney. The R&R found that the Complaint contains no factual allegations against any of them. (Doc. 4, #60, 66). Having reviewed the Complaint, the Court agrees. As such, the Magistrate Judge did not err in recommending their dismissal without prejudice. *Kouassi v. Stephenson*, No. 1:19-cv-651, 2019 WL 5802666, at *2 (N.D. Ohio Nov. 7, 2019).

5

Burks' Eighth Amendment conditions-of-confinement claim and intentional infliction of emotional distress claim related to his time on suicide watch suffer from essentially the opposite defect.[5] As to those claims, he made factual allegations but failed to identify which Defendant(s) allegedly subjected him to the "filthy" conditions or induced the emotional distress.[6] (*See* Doc. 4, #58, 63–64). So the R&R again was correct to recommend dismissing those claims without prejudice.[7] (*See id.* at #63–64, 66 (citing *Chadwell v. Proctor*, No. 3:19-cv-43, 2019 WL 3779990, at *1 (E.D. Ky. Aug. 12, 2019))).

The only allegation that Burks makes against Hockett, meanwhile, is that she allegedly told Burks to file his grievance via a shared tablet, to which Burks says he lacked access. (Doc. 3, #38). Based on that, Burks appears to assert a constitutional claim for a lack of effective grievance procedures. (*See id.* at #38, 46, 48; *see also* Doc. 4, #59–60). The Court finds no error in the R&R's recommendation to dismiss that claim with prejudice, (Doc. 4, #60, 66), since "[a] prisoner does not have a

---

[5] Recall that the Magistrate Judge recommends allowing Burks' conditions-of-confinement claim and intentional infliction of emotional distress claim based on his time in restrictive housing *after he was taken off suicide watch* to proceed. These conditions-of-confinement and intentional infliction of emotional distress claims, which are based on Burks' time *on suicide watch*, are separate claims.

[6] To the extent Burks asserts the separate conditions-of-confinement and intentional infliction of emotional distress claims based on his time in restrictive housing post-suicide watch against unnamed correctional officers (i.e., anyone other than Spradlin and Prater), those claims fail for the same reason—Burks failed to identify who those officers are.

[7] The R&R didn't expressly address Burks' state-law intentional infliction of emotional distress claim based on his time on suicide watch. But that claim arises out of the same facts as his conditions-of-confinement claim that is also based on his time on suicide watch. (*See* Doc. 4, #58). So they each suffer the same defect—that is, Burks did not allege who subjected him to the filthy conditions or emotional distress. And in any event, the R&R did recommend dismissing any "remaining state-law claims" without prejudice, (*id.* at #66), which seems to refer to this intentional infliction of emotional distress claim.

6

constitutionally protected right to an effective grievance procedure." *Valladolid v. Michigan Dep't of Corr.*, No. 15-1930, 2017 WL 3528221, at *3 (6th Cir. Feb. 14, 2017).

Now turn to Burks' First Amendment claim, which the Magistrate Judge construed as a retaliation claim. (Doc. 4, #61). The Magistrate Judge recommends dismissing it because she could not reasonably infer from Burks' allegations that he had engaged in protected conduct. (*Id.*). The Court sees no clear error in that determination. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (cleaned up)). But contrary to the Magistrate Judge's recommendation, (*see* Doc. 4, #66), given that this is a factual shortcoming in his pleadings, rather than a legal defect, the Court will dismiss the First Amendment claim without prejudice, as Burks could potentially allege additional facts that provide more context, which may establish that he engaged in protected activity.

Now consider Burks' Fourteenth Amendment claims, which the Magistrate Judge understood as asserting procedural due process claims based on McAllister (1) allegedly filing a false conduct report against Burks, and (2) allegedly destroying his property. (*Id.* at #57, 62–63). As for the former, the Magistrate Judge held that filing a false conduct report would amount to a constitutional violation only if it deprived Burks of a liberty interest without due process, which Burks had not alleged. (Doc. 4, #62 (citing *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) and *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010))). And

7

as for the latter, the Magistrate Judge found that Burks failed to allege that state remedies were inadequate to address any deprivation of his property. (*Id.* at #63 (citing *Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012))). The Court finds no error—let alone clear error—in either conclusion. But it again opts to dismiss the Fourteenth Amendment claims without prejudice since Burks could potentially allege additional facts to remedy the defects the Magistrate Judge noted.

That leaves Burks' other miscellaneous claims. As for those, the Court concludes that the Magistrate Judge did not err when she found that none should proceed. (Doc. 4, #64–65). The Magistrate Judge correctly explained that Burks lacks standing to assert claims on behalf of other inmates, *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); that he does not have a constitutional right to participate in rehabilitation programs, *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); that his conclusory references to the ADA and Double Jeopardy do not plausibly state a claim, *see Ashcroft*, 556 U.S. at 678–79; and that his claim asserting a violation of prison policy does not state a constitutional violation, *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017).

As for his failure-to-preserve-video-footage claim, the Magistrate Judge correctly found that, to the extent Burks claims he has a right to an investigation, he in fact does not. (Doc. 4, #64–65 (citing *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007))). And to the extent he asserts that the lack of video footage impeded his right of access to the courts, the R&R properly concluded that no First Amendment

8

violation could lie because Burks did not allege that it hindered him in any legal action. (*Id.* at #65 (citing *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996) and *Jenkins v. Hutcheson*, No. 6:15-cv-50, 2015 WL 9480037, at *4 n.3 (S.D. Ga. Dec. 29, 2015))).

All told, the Court sees no clear error in any of those determinations, though it again parts ways with the R&R in terms of how to dismiss the claims. Because Burks cannot allege facts that would cure the problems with his lack-of-rehabilitation-program claim and prison-policy-violation claim,[8] the Court will dismiss those claims with prejudice, as the R&R recommends. (*See* Doc. 4, #66). Burks could, however, theoretically plead additional facts that inch his ADA claim, Double Jeopardy claim, and failure-to-preserve-video-footage claim (if it's based on access to the courts) over the plausibility threshold. And while Burks cannot assert claims for other inmates, those inmates themselves could potentially re-raise the claims (if they so choose). So contrary to the R&R's recommendation, (*see id.*), the Court will dismiss those four claims without prejudice (although, as to the claims of the other inmates, this Opinion and Order is preclusive of *Burks*' ability to re-raise them).

Separately, because Burks is proceeding IFP, the Court must assess whether an appeal taken from this Order would be "in good faith." 28 U.S.C. § 1915(a)(3). For the reasons outlined above, "any appeal of this decision would not have an arguable basis either in law or in fact." *Johnson v. DeWine*, No. 1:22-cv-587, 2023 WL 6421286,

---

[8] As noted above, Burks does not have a constitutional right to partake in rehabilitative programming in prison, and his claim related to SOCF allegedly violating its policies does not state a constitutional violation. Thus, no additional factual allegations could cure those deficiencies.

9

at *3 (S.D. Ohio Oct. 3, 2023) (cleaned up). The Court therefore certifies that any appeal taken from this Order IFP would not be in good faith.

In sum, the Court largely **ADOPTS** the R&R (Doc. 4). Burks' conditions-of-confinement and intentional infliction of emotional distress claims based on his time in restrictive housing after being taken off suicide watch, which he asserts against Defendants Spradlin and Prater, may proceed.[9] Otherwise, the Court **DISMISSES WITH PREJUDICE** Burks' claim against Defendant Hockett, lack-of-rehabilitation-program claim, and prison-policy-violation claim. And the Court **DISMISSES WITHOUT PREJUDICE** all remaining claims. The Court **DIRECTS** the Clerk to terminate Defendants McAllister, Chinn, Dillow, Keatin, Davis, O'Connor, Hockett, Jenkins, Skinner, Treckla, Harris, Cooper, and Barney from the docket. The Court further **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal taken from this Opinion and Order would not be made in good faith and **DENIES** Burks leave to appeal IFP.

    **SO ORDERED.**

January 16, 2025
**DATE**

                            **DOUGLAS R. COLE**
                            **UNITED STATES DISTRICT JUDGE**

---

[9] The Magistrate Judge did not construe Burks' allegations about the "inappropriate" cell search while he was in restrictive housing as a potential Fourth Amendment claim (and indeed, Burks did not explicitly assert any Fourth Amendment violations). Regardless, any such claim would necessarily fail: "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).